

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FIVE

IN THE INTEREST OF: E.R.M.S., T.M.D.S., and Z.W.D.S.

No. ED111003

Appeal from the Circuit Court of St. Louis County

Honorable Ellen W. Dunne

FILED: May 9, 2023

Introduction

R.K. ("Mother") appeals from the trial court's judgments terminating her parental rights over her children, E.R.M.S., T.M.D.S., and Z.W.D.S. (collectively "the Children"). Mother raises four point on appeal. In her first three points, Mother argues the trial court erred in finding clear, cogent, and convincing evidence supporting the termination of her parental rights on the grounds of Section 211.447.5(2)[1] abuse and neglect, Section 211.447.5(3) failure to rectify, and Section 211.447.5(5) parental unfitness. Mother then argues in Point Four that the evidence did not support the trial court's finding that termination of parental rights was in the best interests of the Children under Section 211.447.7. Because we find that the record contains clear, cogent, and convincing evidence that Mother has an untreatable chemical dependency on methamphetamine preventing her from providing the necessary care, custody, and control of the

[1] All Section references are to RSMo (Cum. Supp. 2018). No subsequent statutory changes to Section 211.447 are relevant to this appeal.

and control of the Children, the trial court did not err in finding termination of her parental rights to be appropriate under Section 211.447.5(2) abuse and neglect, and we deny Point One. Further, the record contains evidence supporting the trial court's finding that Mother lacked commitment to the Children and that additional services would not bring about lasting parental adjustment within a reasonable time, thus the trial court did not abuse its discretion in determining that termination of Mother's parental rights was in the best interests of the Children, and we deny Point Four. Because the trial court's termination of parental rights is supported by one of the statutory grounds in Section 211.447.5 and the best-interests determination, we need not review the remaining points on appeal. Accordingly, we affirm the trial court's judgments.

### Factual and Procedural History

Mother and Father had three children: E.R.M.S., born in 2015, T.M.D.S., born in 2008, and Z.W.D.S., born in 2007. The family was living together in 2018 when the Children's Division opened a case due to concerns that Mother and Father were abusing substances in front of the Children and providing inadequate housing. The home in which they lived lacked electricity for two months and had been condemned. The Children's Division offered Family Centered Services and implemented a safety plan.

In December 2018, the Juvenile Officer filed abuse and neglect petitions on behalf of each child, alleging Mother and Father failed to provide the Children with proper care and custody based on inadequate housing and substance abuse. E.R.M.S. was removed from where she was living with Mother in the basement of Mother's grandmother's home, and T.M.D.S. and Z.W.D.S. continued living with their paternal grandparents under the safety plan.

Following an adjudication hearing, the trial court found the allegations of abuse and neglect were true and formally exercised jurisdiction over the Children on January 28, 2019. The trial court found Mother and Father failed to complete the services provided by the

2

Children's Division. Regarding Mother, the trial court found Mother did not have appropriate housing for herself or the Children, admitted to using methamphetamine and marijuana in the presence of the Children, and failed to engage in treatment. Mother subsequently entered into a service plan (the "Service Plan") with the Children's Division in which she agreed to follow the trial court's orders. The trial court ordered Mother to undergo a psychological evaluation and parenting assessment, successfully complete substance abuse treatment, participate in random drug screens, obtain suitable housing, visit with the Children, and attend individual counseling.

On August 26, 2020, the Juvenile Officer petitioned to terminate parental rights for each of the Children. The trial court took judicial notice of the records in the underlying abuse and neglect cases without objection by Mother. The case proceeded to trial in June 2021.

At trial, the following evidence was adduced relating to the termination of Mother's parental rights over the Children:

E.R.M.S. was removed from where she lived with Mother, which was in the basement of Mother's grandmother's house. The basement had no heating, insulation, or appropriate furniture. At the time of trial, Mother was still living in the same conditions and admitted that her housing situation was not suitable for the Children. Mother testified that she had secured stable employment and was working towards obtaining suitable housing.

Mother testified to her history of drug use. Mother, thirty-four years old at the time of trial, started using marijuana when she was fifteen years old and methamphetamine when she was twenty-eight years old. Mother denied being a "hardcore drug user" but admitted that she had not remained sober for a period of more than two months since she started using methamphetamine. Mother admitted that she used methamphetamine in front of E.R.M.S.

3

In the beginning of 2019, Mother enrolled in the inpatient Safeti Program. Mother said she left the treatment program after a few days because of her anxiety issues. Mother then enrolled in an outpatient program at Preferred between March and September of 2019, but Mother was unsuccessfully discharged from the program due to positive drug screens. Mother did not participate in further drug treatment until March 3, 2020, when she reengaged with outpatient treatment at Preferred and resumed drug screening. On May 28, 2020, Mother again enrolled in an inpatient program and again left the program after several days due to her anxiety issues. Mother continued the outpatient substance abuse treatment at Preferred, which was a virtual program in which participants set personal goals and assessed completion of those goals. Through that program, Mother participated in individual counseling with a social worker, Emily Horning ("Horning").

In June 2020, the Children's Division assigned case manager Charity Williams ("Williams") to Mother's case. Once assigned to the case, Williams referred Mother to three to four drug screens per month. According to the policy of the trial court and the Children's Division, drug screens must be completed within twenty-four hours, and missed drug screens count as positive. If Mother completed three consecutive negative drug screens, she was entitled to longer visits with the Children with a designee. Mother did not participate in the court-ordered drug screens and did not complete three consecutive negative drug screens. Mother submitted to a single drug screen on June 9, 2020, in which she tested positive for methamphetamine. Mother testified that the June 2020 positive drug screen coincided with a relapse in her drug use while she was participating in Preferred's treatment program. Following the June 2020 positive drug screen, the trial court had no record of Mother completing any other court-ordered drug screens prior to the trial. Mother testified that her failure to participate in the

4

drug screens was due to transportation issues. Mother's driver's license had been revoked, and Williams offered her bus passes, which Mother declined. Mother testified that she struggled with the distance to the drug-testing site, anxiety, and fear of contracting COVID-19 when taking public transportation. Mother stated she did not communicate these concerns to Williams. Mother secured transportation to her job and to her visits with the Children. During her visits with the Children, which Mother attended consistently, Williams observed emotional ties between the Children and Mother. Mother did not make any significant financial contributions to the Children but provided small contributions of gifts, food, clothing, and some cash during her supervised visits.

In October 2020, Horning recommended Mother for successful discharge from the virtual program at Preferred, and Mother testified she completed the program. A successful discharge from the virtual program did not require Mother to demonstrate her sobriety through drug screens. Williams referred Mother to two drug screens during June 2021, neither of which Mother completed. The trial on the petition to terminate parental rights began in June 2021. The taking of evidence concluded on September 1, 2021.

Following trial, the trial court conducted a review hearing in May 2022 to obtain additional information on the underlying abuse and neglect cases. At that hearing, the trial court gave Mother another opportunity to offer evidence in her termination-of-parental-rights case. Mother provided a medical marijuana card to the Children's Division, which was unable to successfully contact the card's prescribing doctor. Mother indicated to the Children's Division that she was confirmed for a housing voucher but was still completing documentation. Mother resumed participation in drug screens in March 2022 and tested positive for methamphetamine in

5

a drug screen on May 9, 2022. Mother did not raise any objection in connection with the May 2022 evidence.

The trial court issued final judgments in August 2022, terminating Mother's parental rights. In its detailed findings of fact and conclusions of law, the trial court found termination of Mother's parental rights to be appropriate under the grounds of Section 211.447.5(2) abuse and neglect, Section 211.447.5(3) failure to rectify, and Section 211.447.5(5) parental unfitness. With regard to Section 211.447.5(2)(a), the trial court found Mother suffered from the following mental conditions: persistent depressive order ("dysthymia") with intermittent major depressive episodes, relationship distress with an intimate partner, and stimulant use disorder of amphetamine-type substances. The trial court determined that these conditions could not be reversed and rendered Mother unable to provide the necessary care, custody, and control of the Children. The trial court made extensive findings under Section 211.447.5(2)(b), determining that Mother suffered from an untreatable chemical dependency that rendered her unable to provide the necessary care, custody, and control of the Children. The trial court noted Mother's admission of using methamphetamine in front of the Children. The trial court found no evidence that Mother had committed any severe or recurrent acts of physical, emotional, or sexual abuse towards the Children under Section 211.447.5(2)(c) and did not rely on that factor in its judgments. Concerning Section 211.447.5(2)(d), the trial court determined that Mother provided inadequate financial contributions and failed to obtain suitable housing. Mother admitted at trial that her current housing situation was inadequate and she did not want the Children to live with her there. The trial court found termination of parental rights was in the best interests of the Children under Section 211.447.7, primarily noting that Mother did not have disinterest in the

Children but her failure to successfully address her substance abuse issues and to obtain suitable housing demonstrated a lack of commitment to the Children. Mother now appeals.

## Points on Appeal

Mother raises four points on appeal. In Points One, Two, and Three, Mother argues the trial court erred in terminating her parental rights because there was not clear, cogent, and convincing evidence on the grounds of Section 211.447.5(2), Section 211.447.5(3), and 211.447.5(5), respectively. Point Four contends the trial court erred in terminating her parental rights because the evidence did not support the trial court's finding under Section 211.447.7 that termination was in the Children's best interests.

## Standard of Review

In cases involving the termination of parental rights, as in other court-tried cases, "we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Int. of K.A.M.L., 644 S.W.3d 14, 20 (Mo. App. E.D. 2022) (citing S.S.S. v. C.V.S., 529 S.W.3d 811, 815 (Mo. banc 2017) (quoting Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976))).

Termination of parental rights commands a heightened evidentiary standard. Specifically, we review whether "clear, cogent, and convincing evidence" supports the trial court's statutory grounds for terminating parental rights. Section 211.447.6; In re K.A.W.,133 S.W.3d 1, 12 (Mo. banc 2004). Evidence is clear, cogent, and convincing when it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." Int. of D.L.P., 638 S.W.3d 82, 89 (Mo. App. E.D. 2021) (citing In re S.Y.B.G., 443 S.W.3d 56, 59 (Mo. App. E.D. 2014)). We review such evidence "in the light most favorable to the trial court's judgment[,] and we defer to the trial court's determination regarding credibility of witnesses." Id. (citing In re

7

S.Y.B.G., 443 S.W.3d at 59). "This standard may be satisfied even when evidence contrary to the trial court's finding is presented or the evidence might support a different conclusion." Id. at 89 (citing In re S.Y.B.G., 443 S.W.3d at 59).

Upon finding that at least one of the statutory grounds for the termination of parental rights exist, "the [trial] court must then determine whether, by a preponderance of the evidence, the termination of parental rights is in the child's best interest." Id. (citing In re S.Y.B.G., 443 S.W.3d at 59). We review whether the trial court has abused its discretion when determining the best interest of the child. Int. of K.A.M.L., 644 S.W.3d at 20 (citing J.A.R. v. D.G.R., 426 S.W.3d 624, 626 (Mo. banc 2014)). We will find a trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Id. at 25 (quoting D.L.P., 638 S.W.3d at 89).

## Discussion

Section 211.447 governs the statutory grounds for the termination of parental rights. Here, the trial court found grounds for terminating Mother's parental rights over the Children under Section 211.447.5(2) abuse or neglect, 211.447.5(3) failure to rectify, and 211.447.5(5) parental unfitness. In order to affirm the trial court's judgment, we need only find there was clear, cogent, and convincing evidence for *one* of the statutory grounds and that termination was in the Children's best interests. Id. at 23 (internal quotation omitted) ("[O]nly one statutory ground need be proven to support termination[.]").

**I.      Point One—Section 211.447.5(2) Abuse or Neglect[2]**

---

[2] We are tasked with sua sponte ensuring an appellant's compliance with the rules of appellate procedure. Schultz v. Bank of Am. Merrill Lynch Credit Corp., 645 S.W.3d 689, 695 (Mo. App. E.D. 2022). We note that Mother's four points on appeal are deficient under Missouri Rule of Civil Procedure 84.04(d)(1), which requires each point to: (A) identify the trial court ruling that the appellant challenges; (b) state concisely the legal reasons for the appellant's claim of reversible error; and (c) explain in summary fashion why, in the context of the case, those legal reasons

Section 211.447.5(2) provides that the trial court may terminate parental rights if the Juvenile Officer establishes that the child has been abused or neglected. Neglect is defined as "failure to provide, by those responsible for the care, custody, and control of the child, the necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being." Section 210.110(12). A prior adjudication of abuse or neglect may trigger an analysis under Section 211.447.5(2), but past conduct supports terminating parental rights only if it is "convincingly linked to predicted future behavior." In re K.A.W., 133 S.W.3d at 9–10 (internal citation omitted).

In deciding whether to terminate parental rights under Section 211.447.5(2), the trial court must make findings on four factors: (a) mental condition, (b) chemical dependency, (c) acts of abuse toward the children, and (d) repeated or continuous failure to provide for the child. Section 211.447.5(2)(a)–(d). Specifically, the statutory factors are as follows:

> (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
>
> (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

---

support the claim of reversible error. Rule 84.04(d)(1). Mother's points on appeal identify the challenged ruling and introduce the legal reasons supporting her claims of error but do not identify why, under the facts of the case, the trial court's judgment was erroneous. "Given that a template is specifically provided for in Rule 84.04(d)(1), appellants simply have no excuse for failing to submit adequate points relied on." Scott v. King, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017). Deficient points relied on preserve nothing for review and warrant dismissal of the appeal. See Murphree v. Lakeshore Estates, LLC, 636 S.W.3d 622, 624 (Mo. App. E.D. 2021) (internal citation omitted). Nevertheless, we have discretion to review deficient points on appeal that are readily understandable in the context of appellant's argument sections without improperly becoming the appellant's advocate. Scott, 510 S.W.3d at 892 (internal citation omitted). The Respondent did not seek dismissal in this case, and Mother's claims are readily understandable in her argument sections, thus we choose to exercise our preference to review the claims on their merits. See Murphree, 636 S.W.3d at 624 (internal quotation omitted) (noting we prefer to decide an appeal on the merits "where disposition is not hampered by rule violations and the argument is readily understandable"); In re G.G.B., 394 S.W.3d 457, 472 (Mo. App. E.D. 2013) (exercising discretion to review ex gratia a deficient point relied on challenging the best-interest determination in an appeal from a termination of parental rights).

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

Section 211.447.5(2). Although the trial court must consider all four factors, "there is no statutory requirement that a factor listed under a ground for termination be proven by 'clear, cogent, and convincing evidence;' rather, that burden of proof applies to the ground for termination." In Int. of T.T.G. v. K.S.G., 530 S.W.3d 489, 495 (Mo. banc 2017) (quoting In Int. of J.P.B., 509 S.W.3d 84, 92 (Mo. banc 2017)). "While the trial court must make findings on each factor, parental rights may be terminated on the finding of *one* factor." Int. of J.G.W., 613 S.W.3d 474, 480 (Mo. App. E.D. 2020) (internal quotation omitted).

We first address Mother's arguments regarding chemical dependency because we find this factor to be the most significant to the trial court's termination of parental rights under Section 211.447.5(2). While the trial court found evidence of Mother's dependency on multiple substances, including marijuana and opioids, we focus on Mother's dependency on methamphetamine. Mother disputes the trial court's finding that she suffers from a chemical dependency that cannot be treated and that prevents her from consistently providing the necessary care, custody, and control of the Children. While Mother acknowledges her chemical dependency through the continued use of methamphetamine, she maintains her June 2020 relapse and subsequent positive drug screens do not prove that her chemical dependency cannot be treated. To the contrary, Mother points to her successful discharge from Preferred's virtual treatment program as evidence that her chemical dependency is treatable. Mother also suggests a

10

lack of evidence demonstrating that her chemical dependency ever resulted in harm to the Children or was likely to do so in the future.

When examining the chemical dependency factor, a trial court considers the following: (1) whether there is sufficient reason to believe that the chemical dependency had a detrimental impact upon the child, (2) whether the conduct or condition and its accompanying impact on the child meet the requisite severity to support termination, and (3) whether there is a likelihood of future harm to the child by continuing a relationship with the parent. In Int. of K.M.A.-B., 493 S.W.3d 457, 469 (Mo. App. E.D. 2016) (citing In re K.A.W., 133 S.W.3d at 10–12). A chemical dependency weighs in favor of termination of parental rights when the record contains evidence of continuous and consistent drug use, failed abuse treatments, relapses showing an actual dependency, and direct instances or expert opinions as to the harmful impact of the drug use on the child. Id. at 471. Further, evidence supports termination of parental rights for untreatable chemical dependency where substance abuse treatment has been recommended but the parent refuses to participate in or is unsuccessful in completing the treatment. See id. at 470–71.

We recently affirmed a trial court's finding under Section 211.447.5(3) that the father had an untreatable chemical dependency preventing him from providing adequate care where the record showed a history of substance abuse. Int. of K.A.M.L., 644 S.W.3d at 25. In particular, we noted that during the thirty-five months in which the children were under the court's jurisdiction, the father missed approximately seventy drug screens and tested positive for illegal substances, including methamphetamine. Id. at 24–25. There, the father's continuous failure to successfully complete a substance abuse program and submit to court-ordered drug screens demonstrated "an inability to appropriately alter his conduct" and thus proved that his chemical dependency was untreatable and not remediable in the near future. Id.

11

We find the facts here are similar to those in K.A.M.L. and support the trial court's finding that Mother suffers from an untreatable chemical dependency preventing her adequately caring for the Children. See id. Mother missed at least fifty drug screens, tested positive for methamphetamine on separate instances two years apart, and failed to complete a substance abuse treatment program that required negative drug screens for successful discharge. See id. Specifically, Mother failed to successfully complete the two inpatient substance abuse programs in which she was enrolled. In fact, Mother left each of the in-patient programs within days after starting the treatment programs. Mother was unsuccessfully discharged from an outpatient program at Preferred due to positive drug screens and had periods in which she did not participate in any treatment programs as required by the Service Plan. Mother did not participate in a drug treatment program of any type between September 2019 and March 2020. Mother then reengaged in an outpatient treatment and was recommended for successful completion of the virtual, goal-oriented program through Preferred in October 2020. Mother contends that her completion of this virtual program is compelling evidence that her chemical dependency is treatable. We are mindful, however, that a successful discharge from that program focused on achieving individual goals but did not require verification of the participant's sobriety either during or upon completion of the program.

Our courts recognize that a single relapse does not necessarily demonstrate that a parent is unable to provide a child with the necessary care, particularly where the parent has otherwise successfully completed substance abuse treatment. See id. But the record before us does not support Mother's argument that the trial court erroneously focused on a single instance of relapse or gave insufficient weight to Horning's recommendation that Mother move towards successful discharge from Preferred's goal-oriented program. See id. (citing In re D.L.M., 31 S.W.3d 64,

12

70 (Mo. App. E.D. 2000)). K.A.M.L. distinguished its facts from those in D.L.M., upon which Mother relies. In D.L.M., the trial court determined the mother's chemical dependency did not prevent her from providing the child with necessary care because, despite her subsequent relapse, the mother had successfully completed a substance abuse treatment and scheduled drug screens. Int. of K.A.M.L., 644 S.W.3d at 25 (citing In re D.L.M., 31 S.W.3d at 70). The facts here are more in accord with K.A.M.L. and starkly contrast with the facts in D.L.M. Here, Mother displayed *a continuous pattern* of refusing to address her chemical dependency. Poignantly, Mother's claimed relapse during June 2020 coincided with her *only* court-ordered drug screen submission between June 2020 and her termination hearing in June 2021, and the drug screen was positive for methamphetamine. See id. In addition, we cannot infer from the record that Horning had definitive knowledge of Mother's sobriety when she recommended Mother for successful discharge for meeting her individual goals because consistent drug screens were not part of Preferred's virtual program. We reject Mother's claim that the trial court erred in considering Mother's lack of verified sobriety as relevant to its finding that Mother suffered from an untreatable chemical dependency. Mother does not point in the record to any drug screens for which she tested negative for methamphetamine over a nearly two-year period, despite her attempts at treatment in numerous programs, which supports the trial court's finding of an untreatable dependency under Section 211.447.5(2)(b). See In Int. of K.M.A.-B., 493 S.W.3d at 469; In re D.D.C., 351 S.W.3d. 726, 730–31 (Mo. App. W.D. 2011) (finding no evidence of an untreatable chemical dependency where the record showed periods of sobriety documented by negative drug screens, consistent visitation and employment, and no uncompleted treatment programs).

13

Mother admitted at trial that she did not prioritize her participation in drug screens. Mother attributes her failure to participate in the court-ordered drug screens to a lack of transportation. Mother explains that her anxiety issues, including her fear of taking long bus rides with multiple route switches during the COVID-19 pandemic, prevented her from getting the drug screens she acknowledges were required of her. While we appreciate the difficulty of being in public spaces during that time, Mother's failure to participate in drug screens extended throughout 2021, and, notably, Mother never expressed her public transportation concerns to Williams or anyone else at the Children's Division. Further, the trial court found Mother's testimony regarding transportation issues not credible, pointing out that Mother demonstrated her ability to secure transportation during the same time period for work and for her scheduled visits with the Children. We defer to the trial court's determination regarding the credibility of witnesses. See Int. of D.L.P., 638 S.W.3d at 88 (citing In re S.Y.B.G., 443 S.W.3d at 59).

Mother's failure to participate in court-ordered drug screens during the pendency of her termination proceedings undermines her claim. But further weakening Mother's position is her failure to demonstrate her sobriety through the additional drug screen referrals issued by Williams during the time of the trial, specifically, the referrals made on June 17 and June 23, 2021. Mother denied receiving the first referral. During cross-examination on the second trial day on June 25, Mother admitted receiving the second referral for drug screening and stated she intended to complete the drug screen later that day. However, the second referral had been issued two days prior, and had to be completed within twenty-four hours. Thus, Mother presumptively failed the drug screen. Even had the record contained testimony from Mother that she was sober and ready to be reunified with her Children, we would not be required to reverse the trial court's findings because "evidence of short-term improvements in a parent's

14

circumstances which occur after the filing of the termination petition is not necessarily compelling." In re S.Y.B.G., 443 S.W.3d at 63–65 (internal citation omitted) (finding the mother's refusal to participate in drug screens immediately before and after her termination hearing supported the trial court's determination that she lacked commitment to addressing her chemical dependency and supported a finding that the mother's chemical dependency demonstrated her failure to rectify under Section 211.447.5(3)). Indeed, we have held trial courts to be justified in placing significance on a parent's failure to submit to drug testing prior to trial and considering such failure to be indicative of the parent's lack of commitment to the child and maintaining a clean and sober lifestyle supporting reunification. In Int. of S.D., 472 S.W.3d 572, 577–78 (Mo. App. W.D. 2015). Here, similarly, Mother's behavior indicated a lack of commitment to addressing her chemical dependency. See id.; In re S.Y.B.G., 443 S.W.3d at 65.

Further, months after the trial court concluded taking evidence from the parties, the trial court conducted a review hearing in the Children's underlying abuse and neglect cases. At that time, the trial court gave Mother an additional opportunity to provide documentary evidence in favor of not terminating her parental rights, such as pay stubs verifying her employment and negative drug screens verifying her sobriety. Mother submitted to a drug screen on May 9, 2022, and again tested positive for methamphetamine. Mother did not object to the trial court taking notice of the May 2022 positive drug screen. Even were we to exclude the post-trial drug screen from consideration, the record is replete with evidence supporting the trial court's finding that Mother's chemical dependency was untreatable and impacted her ability to care for the Children. See In re S.Y.B.G., 443 S.W.3d at 65.

Acknowledging her use of methamphetamine, Mother falls back on an argument that the record contains no evidence showing her drug use ever harmed or would harm the Children. In

15

K.M.A.-B., we found no clear, cogent, and convincing evidence of neglect under Section 211.447.5(2) where the record did not show the father suffered from a chemical dependency that prevented him from providing the necessary care. In Int. of K.M.A.-B., 493 S.W.3d at 472. There, the evidence showed father was never under the influence of drugs in front of the child and had "maintained a job, had a suitable home ready for the child and consistently provided for the child's needs." Id. at 470. K.M.A.-B. is significantly factually distinguishable from the record before us. Here, Mother claims to be stably employed, but has not yet obtained suitable housing. Mother remains living in the same unfurnished and unheated basement where she resided when E.R.M.S. was removed from her care. Mother acknowledges her living conditions are not suitable for her children. More important, Mother had admitted to using methamphetamine in front of E.R.M.S. See id. The trial court thus did not err in finding that Mother's admission to using methamphetamine in front of E.R.M.S. showed Mother's untreatable chemical dependency rendered her unable to provide the necessary care, custody, and control of the Children. See id.

In reviewing the entire record, Mother failed to successfully complete a drug abuse treatment program in which the participant was required to prove sobriety through drug screens, continuously failed to participate in court-ordered drug screening, demonstrated relapse or a lack of sobriety indicating an actual dependency, and demonstrated a lack of either desire or ability to alter her behavior—even immediately prior or following her termination hearing. We agree that the trial court did not err in finding Mother suffers from an untreatable chemical dependency that prevents her from providing the necessary care, custody, and control for the Children under Section 211.447.5(2)(b). See id. at 469 (citing In re K.A.W., 133 S.W.3d at 12).

16

While trial courts may freely weigh the statute's various factors and other relevant evidence to determine if grounds for termination exist, sufficient evidence proving only one factor is enough to support termination under the statute. Int. of K.A.M.L., 644 S.W.3d at 24 (citing In Int. of K.M.A.-B., 493 S.W.3d at 474; Int. of D.L.P., 638 S.W.3d at 90–91). Here, the trial court considered and made findings on all four factors relevant to the ground of statutory abuse and neglect. In particular, Mother's mental condition and failure to provide financially for the Children also contributed to the trial court's finding of abuse and neglect under Section 211.447.5(2). Because we may uphold the trial court's termination of parental rights on the finding of only one factor under Section 211.447.5(2), such as chemical dependency, we need not address the other factors.[3] See Int. of J.G.W., 613 S.W.3d at 480 (internal quotation omitted); Int. of K.A.M.L., 644 S.W.3d at 23 (internal citation omitted). We thus find the record contains clear, cogent, and convincing evidence to support the trial court's termination of parental rights on the ground of abuse and neglect under Section 211.447.5(2). See Section 211.447.6. Point One is denied.

Because clear, cogent, and convincing evidence supports the trial court's termination of Mother's parental rights on the ground of Section 211.447.5(2), we need not address the evidence that supports termination of Mother's parental rights under Section 211.447.5(3) or Section 211.447.5(5). See Int. of J.G.W., 613 S.W.3d at 485 (internal quotation omitted). Thus, Points One and Four are dispositive of the appeal and we need not reach Mother's second and third points. Points Two and Three are denied.

## II.    Point Four— Section 211.447.7 Best Interests of the Children

---

[3] Additionally, we note that Mother did not preserve any arguments specific to the factors of mental condition or failure to provide in her point relied on. See Rule 84.04(d)(1).

17

Once a trial court finds that at least one ground for termination exists, the trial court then must find that termination is in the best interests of the children under Section 211.447.7. Int. of D.L.P., 638 S.W.3d at 89 (citing In re S.Y.B.G., 443 S.W.3d at 59). Having found that the trial court did not err in finding clear, cogent, and convincing evidence that supports the termination on the ground of abuse and neglect, we now consider Mother's claim in Point Four that the evidence did not support the trial court's finding that termination of parental rights was in the Children's best interests.

"[A] finding that termination is in the child's best interest is a subjective assessment based on the totality of the circumstances." Int. of A.M.W., 652 S.W.3d 225, 244 (Mo. App. W.D. 2022) (internal quotation omitted). We will not reweigh the evidence but only review the trial court's best-interest determination for an abuse of discretion. Id. We will defer to the trial court's findings regarding conflicting evidence. Int. of J.G.W., 613 S.W.3d at 479 (internal quotation omitted).

Section 211.447.7 provides that the trial court shall evaluate and make findings on the following best-interests factors when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

18

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Section 211.447.7. "There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination." Int. of A.M.W., 652 S.W.3d at 244 (internal quotation omitted). Section 211.443 provides additional statutory guidance, directing that Section 211.447:

[s]hall be construed so as to promote the best interests and welfare of the child as determined by the juvenile court in consideration of the following:

(1) The recognition and protection of the constitutional rights of all parties in the proceedings;

(2) The recognition and protection of the birth family relationship when possible and appropriate; and

(3) The entitlement of every child to a permanent and stable home.

Section 211.443, RSMo (2016).

Here, the trial court made the following findings regarding the best interests of the Children: (1) the Children had some emotional ties to Mother; (2) Mother maintained consistent contact with the Children but did not complete court-ordered services to have designee or unsupervised visits; (3) Mother failed to make financial contributions for the support of the Children; (4) it is unlikely that additional services would bring about lasting parental adjustments by Mother enabling the reunification with her Children within a reasonable period of time; (5) Mother did not have disinterest in the Children but her failure to successfully address her

19

substance abuse issues and to obtain suitable housing demonstrated her lack of commitment to the Children; (6) Mother had no felony convictions that would deprive the Children of a stable home; (7) there was no evidence that Mother committed any acts of physical harm to the Children, however, Mother's failure to successfully address her substance abuse issues and mental health conditions, as well as to obtain adequate housing, places the Children at risk of harm. The trial court concluded that termination of Mother's parental rights was in the best interests of the Children.

A.    Financial Contribution—Section 211.447.7(3)

Mother disputes that she failed to make financial contributions for the cost of care and maintenance of the Children. We recognize Mother's smaller contributions through gifting the Children snacks, clothing, and sometimes money during her supervised visits. We also note that the Service Plan ordered Mother to pay child support as directed, and there was no court-ordered child support. However, "[a] parent has the responsibility to provide financial support even while the child is in the custody of the Children's Division and even if no support has been ordered." In re G.G.B., 394 S.W.3d at 474 (internal citation omitted).

This factor weighs against reunification when a parent is able to contribute financially to the children but fails to do so. See Int. of K.A.M.L., 644 S.W.3d at 26–27 (citing In re G.G.B., 394 S.W.3d at 473–74). Here, the record lacks evidence that Mother made any significant financial contributions to the Children after she obtained stable employment. We note that evidence of Mother's actual salary or ability to provide financial contributions is unclear. Although Mother testified about her pending promotions and salary increases at work, she neither produced a pay stub nor other employment verification. Mother testified she provided a pay stub to the Children's Division, but the Children's Division denied receiving it, and the trial court had discretion to resolve the conflicting testimony. See Int. of D.L.P., 638 S.W.3d at 94

20

(citing In re S.Y.B.G., 443 S.W.3d at 59) (noting the trial court is in a better position to make credibility determinations). Mother did not offer a pay stub as evidence at trial nor after trial when given the opportunity to produce additional evidence. Even accepting Mother's testimony as to her gainful employment, the positive drug screens and testimony regarding her gambling habits support the trial court's conclusion that Mother was capable of financially supporting the Children but chose instead to fund her drug use and gambling. See In re S.Y.B.G., 443 S.W.3d at 67 (finding the mother's lack of significant financial contributions beyond small gifts and meals during scheduled visits and lack of employment verification supported the trial court's best interests determination); In re G.G.B., 394 S.W.3d at 473 (finding the father was capable of providing some financial support to the children because he was employed part-time, not incapable of holding a job, and was able to fund his drinking and marijuana habits). Further, it was within the trial court's discretion to give little weight to Mother's token gestures of support during visitation. See In re G.G.B., 394 S.W.3d at 474. The trial court did not abuse its discretion in finding that Mother failed to contribute to the costs of care and maintenance for the Children. See id.

B.    Additional Services—Section 211.447.7(4)

Mother also claims the evidence did not support the finding that additional services would be unlikely to bring about lasting parental changes enabling reunification with her Children within a reasonable period of time. Again, Mother does not argue that the Children should be returned to her custody, as she admits she does not have suitable housing. Instead, Mother asks for more time to work towards reunification. Mother maintains she complied with many of the court-ordered services in the Service Plan. The record reflects Mother's efforts to comply *with parts* of the Service Plan. But Mother's failure to adequately engage with the services intended to address the problems that initially caused the trial court to remove the

21

Children from Mother's custody is obvious: primarily, Mother's substance abuse issues and inadequate housing. See id. (internal citation omitted).

Under the Service Plan, Mother agreed to become and remain drug free, including participating in random drug screenings as requested by the Children's Division, and to obtain and maintain housing for herself and her Children that meets the Children's Division minimum standards. The record shows that in 2022, Mother remained in the same unsuitable basement with no change in living conditions from when her Children were removed from her care in December 2018. Despite Williams's referrals for drug screens three to four times a month, Mother failed to participate between June 2020 and May 2022. See id. On the only two documented instances in which Mother submitted to court-ordered drug screens, she tested positive for methamphetamine on both occasions. To facilitate Mother's attendance at the drug screens, Williams offered Mother bus passes, which Mother refused. Williams testified that there were no additional services that could be provided to Mother that were not already offered that would bring about any kind of lasting adjustment in Mother's performance. See id. (internal citation omitted). Further, Mother's testimony and treatment record indicates that she has never maintained sobriety for more than a period of two months. The Service Plan's requirement for Mother to complete substance abuse treatment was intended to allow Mother to demonstrate periods of sobriety and readiness for reunification with the Children. Although Mother testified she completed the goal-oriented program through Preferred, the record did not document her sobriety to contradict the Juvenile Officer's evidence of her chemical dependency sufficient for the trial court to find that reunification was in the Children's best interests. Mother has continuously failed to participate in the services that would enable her to address the issues that caused the trial court to remove the Children from her custody. Mother has had years to make

22

progress towards reunification since the January 2019 abuse and neglect adjudication and August 2020 petition for termination, but has failed to do so. For these reasons, the trial court did not abuse its discretion in finding that additional services would be unlikely to bring about lasting parental adjustment within a reasonable time to enable Mother's reunification with her Children. See id.

### C. Lack of Commitment—Section 211.447.7(5)

The trial court acknowledged Mother's interest in and love for her Children. Under Section 211.447.7(1), the trial court found some emotional ties between Mother and the Children and, under Section 211.447(2), recognized Mother was consistent in her visitation. Nevertheless, the trial court found Mother's failure to successfully address her substance abuse issues and obtain adequate housing despite more than ample time to do so demonstrated a lack of commitment to her Children.

Mother's argument here is similar with regards to additional services in that she asserts she demonstrated commitment to the Children by complying with the court-ordered Service Plan by obtaining employment, participating in the psychological evaluation, and regularly visiting the Children. Mother claims her commitment was also displayed through other progress, such as getting her driver's license reinstated and handling her outstanding traffic warrants and attorneys' fees.

We very much commend Mother's efforts to participate in her psychological evaluation, maintain employment, consistently visit the Children, and work on her transportation issues. We sincerely wish that these efforts were sufficient to provide a reasonable assurance of a timely reunification with Mother that would be in the Children's best interest. But time is fleeting, and Mother has squandered the opportunities given to her by the Children's Division and the trial court. See In re D.D.C., 351 S.W.3d at 732 (citing In re Z.L.R., 347 S.W.3d 601, 609 (Mo. App.

23

S.D. 2011)) (noting the established goal is to allow the child to find a permanent and stable home as quickly as possible and not remain in legal limbo for an indeterminate time). Despite Mother's conduct in certain areas, the record convincingly supports the trial court's determination that Mother has not successfully addressed the issues that would show reunification with the Children to be in their best interests. See Int. of A.M.W., 652 S.W.3d at 245. Since the abuse and neglect adjudication in January 2019 and petition to terminate her parental rights in August 2020, Mother has not obtained appropriate housing for herself and the Children and has not overcome her substance abuse issues to the level of ensuring the safety and health of the Children if they were to return to her custody. Indeed, Mother concedes she is not ready for the Children to be returned to her custody.

Although Mother's consistent efforts to visit the Children—sometimes at the expense of violating the law by driving without a valid driver's license—shows her interest in and love for her Children, the trial court did not abuse its discretion in recognizing that such efforts also indicated that Mother could have attended at least some of her drug screens. Had Mother prioritized her drug screens and obtained three consecutive negative results, she would have been able *to increase her visits and time with her Children* with designee and unsupervised visitation. Williams testified that the Children expressed that they loved and missed Mother. However, it was not clearly against the logic of the circumstances nor lacking in careful consideration for the trial court to find that Mother's behavior suggested that she prioritized her needs before the Children's interests and her own wishes for reunification. See Int. of K.A.M.L., 644 S.W.3d at 27 (citing Int. of J.G.W., 613 S.W.3d at 490). Mother testified she understood the consequences of failing to provide documented periods of sobriety by missing her drug screens as well as not obtaining suitable housing. Despite her understanding of the serious consequences of her

24

conduct, Mother nevertheless failed to fully comply with the Service Plan, missed drug screens only days before her hearing, and tested positive for methamphetamine even after the trial court explained to her in May 2022 the finality of its imminent termination of parental rights.

### D. Best-Interests Summary

"Every child is entitled to a permanent and stable home." In re Z.L.R., 347 S.W.3d at 608 (citing In re K.A.W., 133 S.W.3d at 9); see Section 211.443(3). Since the trial court first took jurisdiction over the Children in January 2019, Mother has had plentiful opportunities to address the issues that brought the Children into the court's care. Mother has been given the chance over several years to progress towards building a safe, stable, and permanent home for her Children. Mother has either chosen not do so, or is simply unable to do so given the degree of her substance abuse and other problems. In order to provide a proper home, Mother must provide more than a house; a "proper home" includes "the ability to refrain from illegal drug use, provide financial and emotional support, and provide a safe home environment." In re G.G.B., 394 S.W.3d at 471 (internal citation omitted). In addition to Mother's failure to obtain adequate housing, the record shows Mother has failed to financially contribute to her Children's needs or address her substance abuse issues. While we commend Mother's efforts to comply with certain services and recognize her emotional relationship with the Children, a cloud of uncertainty has hovered over the Children for approximately three years. Ever since December 2018, the Children have had to cope with the uncertainty of whether they will ever have a proper home in a family setting. Despite her love for her Children, Mother is unable to provide Children a home that will be in the Children's best interest. As the trial court noted, Mother had ample time to demonstrate readiness for reunification with the Children and has not shown that further prolonging the proceedings would be in their best interests. The Children are entitled to the chance of a stable and permanent home of which they would be deprived if they, again, had to

await the next outcome of Mother's repeated attempts to make progress towards reunification. The Children have waited for more than three years for Mother to do what is necessary for their best interests. We cannot say that the trial court has erred by removing the cloud of uncertainty, bringing the Children's interminable wait to an end, and opening the door for a permanent family relationship. Critically, termination of the parent-child relationship under Section 211.447.7 must be evaluated on the best interest of the children, *and not* the best interest of the parent. In re Z.L.R., 347 S.W.3d at 610. While we recognize that progress is not linear and that Mother seeks more time to demonstrate readiness for reunification, we agree that the trial court properly prioritized the best interests of the Children when issuing its final judgments. See id.

In order to find that termination is in the best interests of the Children, there is no requirement that all seven factors be negated before termination can take place, nor is there a minimum number of negative factors necessary for termination. Int. of A.M.W., 652 S.W.3d at 244 (internal quotation omitted); Int. of K.A.M.L., 644 S.W.3d at 28 (internal quotation omitted). Accordingly, based on the factors discussed above, we find the trial court did not abuse its discretion in finding termination of parental rights to be in the best interests of the Children. See Section 211.447.7; Int. of K.A.M.L., 644 S.W.3d at 20 (citing J.A.R., 426 S.W.3d at 626). Point Four is denied.

## Conclusion

The judgments of the trial court are affirmed.

KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Robert M. Clayton III, J., concurs.

26